UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X



JOSHUA E. KIESS,

                                        Plaintiff,

        -against-

The CITY OF NEW YORK,
the NEW YORK CITY POLICE PENSION FUND Art. II,
the BOARD OF TRUSTEES of the N.Y.C. Police Pension
Fund Art. II, the MEDICAL BOARD of the N.Y.C. Police
Pension Fund Art. II, RAYMOND W. KELLY – Individually
and in his Official Capacities as the Police Commissioner of
the City of N.Y. and as the Chairperson of the Board of
Trustees of the N.Y.C. Police Pension Fund Art. II,
ANTHONY J. GARVEY – Individually and in his Official
Capacity as the Executive Director of the N.Y.C. Police
Pension Fund Art. II, KEVIN HOLLORAN – Individually
and in his Official Capacity as the Executive Director of the
N.Y.C. Police Pension Fund Art. II, PETER J. LESNIEWSKI
– Individually and in his Official Capacity as a Chairman or
Physician of the Medical Board of the N.Y.C. Police Pension
Fund Art. II, FRANK G. GUELLICH – Individually and in
his Official Capacity as a Chairman or Physician of the
Medical Board of the N.Y.C. Police Pension Fund Art. II,
NICHOLAS F. DEPALMA – Individually and in his Official
Capacity as a Physician of the Medical Board of the N.Y.C.
Police Pension Fund Art. II, STEPHEN E. BORKOW –
Individually and in his Official Capacity as a Physician of the
Medical Board of the N.Y.C. Police Pension Fund Art. II,
ELI J. KLEINMAN – Individually and in his Official
Capacities as the Supervising Chief Surgeon of the N.Y.C.
Police Department and as the Medical Advisor to the Board
of Trustees of the N.Y.C. Police Pension Fund Art. II,
MICHAEL T. MURRAY – Individually and in his Official
Capacity as a Police Surgeon of the N.Y.C. Police Department,
RAYMOND CAROLI – Individually and in his Official
Capacity as a Captain of the N.Y.C. Police Department,

                                    Defendants.

-----------------------------------------------------------------------X

COMPLAINT AND
JURY TRIAL DEMAND

JUDGE MARRERO



The plaintiff, JOSHUA E. KIESS, by his attorneys, CRONIN & BYCZEK, LLP, as and

1

for his complaint  against defendants, the CITY OF NEW YORK, the NEW YORK CITY POLICE PENSION FUND Art. II, the BOARD OF TRUSTEES of the New York City Police Pension Fund Art. II, the MEDICAL BOARD of the New York City Police Pension Fund Art. II, RAYMOND W. KELLY, ANTHONY J. GARVEY, KEVIN HOLLORAN, PETER J. LESNIEWSKI, FRANK G. GUELLICH, NICHOLAS F. DEPALMA, STEPHEN E. BORKOW, ELI J. KLEINMAN, MICHAEL T. MURRAY and, RAYMOND CAROLI, respectfully sets forth and alleges as follows:

## INTRODUCTION

1.  This is an action for equitable relief, compensatory damages, punitive damages, and attorneys' fees on behalf of plaintiff, JOSHUA E. KIESS who was, and currently is being, deprived of his Constitutional, Statutory, and Common Law rights under Federal, State, and City law as a result of the policies, practices, and customs of defendants – collectively and individually as further set forth herein – regarding Plaintiff's membership in the NEW YORK CITY POLICE PENSION FUND Article II and employment by the CITY OF NEW YORK as a Police Officer of the New York City Police Department. Said policies, practices, and customs of defendants – collectively and individually as further set forth herein – were implemented under color of law.

## JURISDICTION AND VENUE

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

(a) the Fourteenth amendment to the United States Constitution providing for the rights of all persons within the jurisdiction of the United States to enjoy equal protection and due

process of law, 42 U.S.C. §§ 1983, 1985(3) and 1988 providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

   (b) the common law of the State of New York providing for damages to persons subjected to the negligent infliction of emotional distress or to negligent interference with employment contracts.

   (c) New York City Administrative Code § 13-252, where a member is physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and certifying the time, place and conditions of such city-service performed by such member resulting in such alleged disability and that such alleged disability was not the result of willful negligence on the part of such member;

  3. The unlawful employment practices, violations of plaintiffs' civil rights and tortuous acts complained of herein were committed within the Southern District of New York and the State of New York.

  4. The pendent jurisdiction of the federal district court is invoked with respect to the plaintiffs' claims under New York State Constitution and Common Law and New York City Administrative Code §13-252, pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

  5. Plaintiff's complaints of negligent infliction of emotional distress and interference with employment contracts are timely filed herein pursuant to the New York State three (3) year statute of limitations and this statute of limitations is also applicable to his claims under the Civil Rights Act.

## PLAINTIFF

6.  Plaintiff JOSHUA E. KIESS (hereinafter referred to as "Plaintiff") is a male citizen of the United States of America, over twenty-one (21) years of age, resident of the County and State of New York, and former employee of the CITY OF NEW YORK as a Police Officer of the New York City Police Department (hereinafter referred to as "NYCPD").

## DEFENDANTS

7.  Defendant CITY OF NEW YORK (hereinafter referred to as "CITY") was and is a municipal corporation organized and existing under and by virtue of the laws of the State of New York, and at all relevant times herein was Plaintiff's employer, with its central offices in the County of New York, and diverse offices and facilities throughout the State and County of New York.

8.  Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 2000-e (a) and (b), as amended in 1972, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

9.  Defendant NEW YORK CITY POLICE PENSION FUND Article II (hereinafter referred to as "NYCPPF"), at all relevant times herein had and has the powers and privileges of a corporation and by its name all of its business and related matters and affairs are transacted. The NYCPPF is considered an entity separate from the NYCPD, and the NYCPPF does constitute an agency of the CITY under the provisions of Chapter Seventeen of the New York City Charter.

10. Defendant BOARD OF TRUSTEES of the NYCPPF (hereinafter referred to as "BOT")

did and does administer the NYCPPF and establishes rules and regulations for the administration and transaction of the business of the NYCPPF and for the control and disposition thereof. The BOT of the NYCPPF did and does work closely with the NYCPD.

11. Defendant MEDICAL BOARD of the NYCPPF (hereinafter referred to as "MB") did and does consist of three physicians, or alternate physicians (as directed by the BOT of the NYCPPF), with one of such appointed by the BOT of the NYCPPF, one appointed by the Commissioner of Health of the CITY, and one appointed by the Commissioner of Citywide Administrative Services of the CITY. The MB of the NYCPPF performs and exercises functions, powers, and duties that consist of arranging for and passing upon all medical examinations required under the provisions of the N.Y.C. Administrative Code, to investigate all essential statements and certifications by or on behalf of any member of the NYCPPF in connection with an application for disability retirement, and to report to the BOT of the NYCPPF its conclusions and recommendations thereon.

12. Defendant RAYMOND W. KELLY (hereinafter referred to as "KELLY"), at all materially relevant times herein, was and is the Police Commissioner of the CITY, and was and is the Chairperson of the BOT of the NYCPPF by virtue of holding such office as Police Commissioner of the CITY. The Police Commissioner of the CITY is appointed by the Mayor of the CITY and serves as the head of the NYCPD with cognizance and control of the government, administration, disposition and discipline of the NYCPD, and of the police force of the NYCPD. The Police Commissioner of the CITY serves as the Chief Executive Officer of the police force of the NYCPD, chargeable with and responsible for the execution of all laws and rules and regulations of the NYCPD. KELLY is a Defendant to the herein action in his Individual and said Official Capacities.

13. Defendant ANTHONY J. GARVEY (hereinafter referred to as "GARVEY") at materially relevant times herein, was the Executive Director of the NYCPPF. KELLY (or a predecessor thereof), as the Police Commissioner of the CITY, appointed GARVEY as the Executive Director of the NYCPPF. The Executive Director of the NYCPPF was required to perform such duties as were conferred upon him by KELLY as the Chairperson of the BOT of the NYCPPF, by resolution passed by the BOT of the NYCPPF, or by law. GARVEY is a Defendant to the herein action in his Individual and said Official Capacity.

14. Defendant KEVIN HOLLORAN (hereinafter referred to as "HOLLORAN") at materially relevant times herein, was and is currently the Executive Director of the NYCPPF. KELLY, as the Police Commissioner of the CITY, appointed HOLLORAN as the Executive Director of the NYCPPF. The Executive Director of the NYCPPF was and is required to perform such duties as were and are conferred upon him by KELLY as the Chairperson of the BOT of the NYCPPF, by resolution passed by the BOT of the NYCPPF, or by law. HOLLORAN is a Defendant to the herein action in his Individual and said Official Capacity.

15. Defendant PETER J. LESNIEWSKI (hereinafter referred to as "LESNIEWSKI") is a physician holding N.Y. Physician License No. 60 137979, and at materially relevant times herein, was a Chairman and, in addition or in the alternative, a Physician or Alternate Physician of the MB of the NYCPPF. LESNIEWSKI was appointed by, and held such office at the pleasure of, the Commissioner of Citywide Administrative Services of the CITY. LESNIEWSKI is a Defendant to the herein action in his Individual and said Official Capacity.

16. Defendant FRANK G. GUELLICH (hereinafter referred to as "GUELLICH") is a physician holding N.Y. Physician License No. 60 190694, and at materially relevant times herein, was a Chairman and, in addition or in the alternative, a Physician or Alternate Physician

of the MB of the NYCPPF. GUELLICH was appointed by, and held such office at the pleasure of, the Commissioner of Health of the CITY. GUELLICH is a Defendant to the herein action in his Individual and said Official Capacity.

17. Defendant NICHOLAS F. DEPALMA (hereinafter referred to as "DEPALMA") is a physician holding N.Y. Physician License No. 60 087231, and at materially relevant times herein, was, and may currently remain, a Physician or Alternate Physician of the MB of the NYCPPF. DEPALMA was appointed by, and held or holds such office at the pleasure of, the BOT of the NYCPPF. DEPALMA is a Defendant to the herein action in his Individual and said Official Capacity.

18. Defendant STEPHEN E. BORKOW (hereinafter referred to as "BORKOW") is a physician holding N.Y. Physician License No. 60 092199, and at materially relevant times herein, was, and may currently remain, a Physician or Alternate Physician of the MB of the NYCPPF. BORKOW was appointed by, and held or holds such office at the pleasure of, the Commissioner of Health of the CITY. BORKOW is a Defendant to the herein action in his Individual and said Official Capacity.

19. Defendant ELI J. KLEINMAN (hereinafter referred to as "KLEINMAN") is a physician holding N.Y. Physician License No. 60 136494, and at all materially relevant times herein, was and is the Supervising Chief Surgeon of the NYCPD (Tax Registry No. 895053), and, based on information and belief, was appointed as such by KELLY (or a predecessor thereof), as the Police Commissioner of the CITY, and remains as such at the pleasure of KELLY as the Police Commissioner of the CITY. The Supervising Chief Surgeon serves within the NYCPD Administration with functions, powers, and duties that consist of, but are not limited to: overseeing and supervising all of the medical activities undertaken by the entire NYCPD;

advising KELLY, as the Police Commissioner of the CITY, as well as the NYCPD Chief of

Personnel, on establishing medical policy and preparedness issues relating to the NYCPD and

the members thereof; and supervising the activities, treatments, diagnoses, prognoses, and duty

status determinations of members of the police force of the NYCPD under the care or

examination rendered or conducted by all Police Surgeons and Honorary Police Surgeons of the

NYCPD. The Supervising Chief Surgeon also acts as the Medical Advisor to the BOT of the

NYCPPF. KLEINMAN is a Defendant to the herein action in his Individual and said Official

Capacities.

20. Defendant MICHAEL T. MURRAY (hereinafter referred to as "MURRAY") is a

physician holding N.Y. Physician License No. 60 206804, and at all materially relevant times

herein, was a Police Surgeon of the NYCPD (Tax Registry No. 942844), and, based on

information and belief, was appointed as such by KELLY (or a predecessor thereof), as the

Police Commissioner of the CITY. At all materially relevant times herein, MURRAY performed

Police Surgeon duties while assigned to the "Department Orthopedic Clinic" of the Medical

Division of the NYCPD, and, based upon information and belief, being appointed to such

assignment by, and/or remaining in such assignment at the pleasure of, KELLY as the Police

Commissioner of the CITY and/or KLEINMAN. In such capacity, MURRAY conducted

medical examinations, treatment authorizations, diagnoses, prognoses, and duty status

determinations of members of the police force of the NYCPD (including Plaintiff) under the

policies, practices, customs, orders, or otherwise directions, commands, and supervision of

KLEINMAN. Members of the police force of the NYCPD (including Plaintiff) were referred to

MURRAY in the "Department Orthopedic Clinic" of the Medical Division by their assigned

"Medical District" Police Surgeon under the policies, practices, customs, orders, or otherwise

directions, commands, and supervision of KLEINMAN. MURRAY is a Defendant to the herein action in his Individual and said Official Capacity.

21. Defendant RAYMOND CAROLI (hereinafter referred to as "CAROLI"), was at all materially relevant times herein, a Captain of the NYCPD (Tax Registry No. 888518), assigned as the Commanding Officer of the 6th Precinct of the NYCPD, appointed as such by, and at the pleasure of, KELLY as the Police Commissioner of the CITY. At all materially relevant times herein, CAROLI was the Commanding Officer of Plaintiff. CAROLI has since been promoted by KELLY, as the Police Commissioner of the CITY, to the rank of Deputy Inspector and currently remains assigned as the Commanding Officer of the 6th Precinct of the NYCPD. CAROLI is a Defendant to the herein action in his Individual and said Official Capacity.

## PROCEDURAL REQUIREMENTS

22. Plaintiff has filed suit with this Court within the applicable statute of limitations period.

23. Plaintiff is not required to exhaust any administrative procedures prior to suit under the United States Constitution and the Civil Rights Act of 1871.

## BACKGROUND

24. On March 4, 2002, Plaintiff was appointed as an Auxiliary Police Officer of the Auxiliary Police Section of the NYCPD, and was assigned to the command of the 10th Precinct.

25. Plaintiff was the recipient of numerous forms of Departmental Recognition in said capacity, receiving the Award of Merit on two occasions, a Commendation on one occasion, a Unit Citation, and the honored distinction of "Auxiliary Police Officer of the Year – Patrol Borough Manhattan South" by KELLY as the Police Commissioner of the CITY.

26. Plaintiff served in said capacity until his appointment and employment as a Police Officer in the NYCPD.

27. On June 4, 2002, Plaintiff was simultaneously appointed and employed as a Police Cadet of the Police Cadet Corps of the NYCPD. Plaintiff was assigned to the permanent commands of Police Service Area 4 and then the Office of the Chief of Housing Bureau, and was employed in said capacity until his appointment and employment as a Police Officer in the NYCPD.

28. Plaintiff was appointed as a Police Officer to the uniformed police force of the NYCPD on January 20, 2004, and was thereby employed by the CITY, and more specifically the NYCPD as an agency of the CITY, in which Plaintiff served continuously in said capacity as a Police Officer until his constructive discharge on January 30, 2008.

29. Plaintiff, prior to his appointment as a Police Officer of the NYCPD, passed all physical and mental examinations and agility tests administered by the NYCPD that demonstrated Plaintiff to be both physically and mentally fit to perform the full duties of a Police Officer of the uniformed police force of the NYCPD.

30. Pursuant to N.Y.C. Admin. Code § 13-214, Plaintiff was at all material times hereinafter a member of the NYCPPF while in city-service, and, as a member thereof, made any and all contributions thereto as required by law.

31. Accordingly, pursuant to N.Y. Constitution Art. V, § 7, Plaintiff's said membership in the NYCPPF formed a contractual relationship, the benefits to Plaintiff of which were not to be diminished or impaired.

32. On November 24, 2006, Plaintiff sustained line-of-duty (hereinafter referred to as "LOD") injuries to his neck, back, and both knees in a motor vehicle accident, when a taxicab failed to yield the right-of-way at an intersection and collided into the marked NYCPD vehicle that Plaintiff was operating with emergency lights and sirens activated while responding to an emergency situation involving multiple reports of an armed dispute in progress.

33. Shortly thereafter, CAROLI recommended LOD status for Plaintiff's injury, which was ultimately approved by the Medical Division of the NYCPD, which never contested that Plaintiff was injured while acting in the line-of-duty as a natural and proximate result of city-service, which was not the part of any willful negligence by Plaintiff.

34. From November 24, 2006, until the present the Plaintiff was disabled from the performance of Full Duty as a New York City Police Officer.

35. Upon conferral, advisement, and recommendation of Plaintiff's numerous attending physicians, including multiple board-certified orthopedic spinal surgeons and neurologists, as well as Plaintiff's assigned Police Surgeon Frederick S. Fensterer of NYCPD Medical District 5, Plaintiff submitted an Application for Accident Disability Retirement (hereinafter referred to as "ADR") to the BOT of the NYCPPF and the Commanding Officer of the Medical Division of the NYCPD on or around May 25, 2007.

36. Shortly thereafter, under the direction of KELLY, as the Police Commissioner of the CITY, an Application for Ordinary Disability Retirement (hereinafter referred to as "ODR") was also submitted on Plaintiff's behalf to the BOT of the NYCPPF and the Commanding Officer of the Medical Division of the NYCPD.

37. On June 15, 2007, the Plaintiff's assigned Police Surgeon Frederick S. Fensterer, of NYCPD Medical District 5, determined that Plaintiff was medically unable to attempt firearms qualification as a result of the LOD injuries sustained on November 24, 2006, and the Commanding Officer of the Medical Division of the NYCPD so advised the Commanding Officer of Plaintiff.

38. On July 10, 2007, Plaintiff was examined by the MB of the NYCPPF – consisting of

physicians GUELLICH, LESNIEWSKI, and DEPALMA – which unanimously recommended disapproval of Plaintiff's own Application for ADR and the Police Commissioner's Application for ODR submitted by KELLY on behalf of Plaintiff.

39. Shortly thereafter, in light of new medical evidence, the BOT of the NYCPPF remanded the matter back to the MB of the NYCPPF and so directed the MB of the NYCPPF to evaluate and consider specific new medical evidence including, *inter alia*, a report from a board-certified orthopedic surgeon stating that Plaintiff was unable to return to work due to severe pain from his LOD injuries and had limited options for improvement through surgery as well as additional objective medical evidence from the results of an EMG performed by a board-certified neurologist which demonstrated radiculopathy, with an accompanying report that Plaintiff was totally disabled from his LOD injuries.

40. On January 14, 2008, Plaintiff appeared before MURRAY at the Department Orthopedic Clinic of the NYCPD Medical Division and was returned from Sick Report duty status to Restricted Duty status, and was further advised by MURRAY that if Plaintiff was disapproved for a second time by the MB of the NYCPPF that MURRAY would modify his prognosis and duty capability determinations and immediately return Plaintiff to Full Duty status under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN. Plaintiff was further advised by MURRAY that an attempt to circumvent Full Duty status by going on Sick Report would subject Plaintiff to suspension by the NYCPD Medical Division for "malingering" under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN.

41. On January 29, 2008, Plaintiff was re-examined by the MB of the NYCPPF – consisting

of physicians LESNIEWSKI, DEPALMA, and BORKOW – which failed to consider or even address the new medical evidence as so directed by the BOT of the NYCPPF, and further failed to explain its own medical findings upon examination of Plaintiff, and unanimously rendered an arbitrary, capricious, irrational, unreasonable, and unlawful recommendation to the BOT of the NYCPPF of disapproval of Plaintiff's own Application for ADR and the Police Commissioner's Application for ODR submitted by KELLY on behalf of Plaintiff.

42. On January 30, 2008, Plaintiff appeared before and conferred with his assigned Police Surgeon Frederick S. Fensterer of NYCPD Medical District 5. Plaintiff was advised by Police Surgeon Fensterer that Plaintiff was at imminent risk of being immediately returned to Full Duty status by MURRAY as a result of the second disapproval by the MB of the NYCPPF under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN. Plaintiff was further advised by FENSTERER that an attempt to circumvent the return to Full Duty status by MURRAY by going on Sick Report would subject Plaintiff to suspension by the NYCPD Medical Division for "malingering" under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN. Furthermore, Police Surgeon Fensterer indicated that he was being pressured to retract his prior determination that Plaintiff was medically unable to attempt firearms qualification as a result of the second disapproval by the MB of the NYCPPF under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN, at which time the Commanding Officer of the Medical Division of the NYCPD forthwith so advised CAROLI, as Commanding Officer of the 6th Precinct of the NYCPD, that Plaintiff was medically able to attempt firearms qualification.

43. In light of these exigent circumstances, and the requirement of Plaintiff to be armed at all

times while on duty, even in a Restricted Duty capacity, and the imminent risk of being returned

to Full Duty status at any time as a result of the second disapproval by the MB of the NYCPPF

under the policies, practices, customs, orders, or otherwise directions, commands, and

supervision of KLEINMAN, Plaintiff immediately reported to the 6th Precinct and advised

CAROLI of these circumstances, and that the second disapproval by the MB of the NYCPPF

was arbitrary, capricious, unreasonable, irrational, and otherwise unlawful, and subsequently

resulted in the compromise of the safety of Plaintiff, fellow officers, and the general public.

CAROLI failed to take any appropriate action, conduct any further investigation or inquiry into

available accommodation, remedy, or recourse to said facts and circumstances that Plaintiff was

under. Subsequently, under extreme duress and as a choice of last resort, Plaintiff surrendered his

firearms and NYCPD property to Sergeant Kathleen M. Van Buren and conducted a Resignation

and Exit Interview with CAROLI in which Plaintiff tendered his resignation to CAROLI under

wrongful constructive discharge from his employment by the CITY and the NYCPD on January

30, 2008.

44. As a Police Officer, Plaintiff was the recipient of Departmental Recognition in the form

of an Excellent Police Duty medal, and had twelve (12) additional formal Departmental

Recognition Requests submitted on behalf of Plaintiff by his supervisory officers that were

pending at the time of his constructive discharge from employment by the CITY and the

NYCPD.

45. On May 14, 2008, the BOT of the NYCPPF made a final determination disapproving of

Plaintiff's Application for ADR and the Police Commissioner's Application for ODR submitted

by KELLY on behalf of Plaintiff, and failed to remand the arbitrary, capricious, irrational,

unreasonable, and otherwise unlawful findings of the MB of the NYCPPF that, actually and

constructively, materially contributed to Plaintiff's wrongful constructive discharge from

employment by the CITY and the NYCPD, and, actually and constructively, materially

diminished and impaired Plaintiff's contractual pension rights.

46. As evidenced in the transcript of the May 14, 2008 Executive Session of the BOT of the

NYCPPF, the BOT of the NYCPPF failed to compel a further investigation into the facts and

circumstances of Plaintiff's disabilities as well as his discontinuance of police service with the

NYCPD, failed to analyze the extensive medical documentation in proper detail, and ignored

rationale and commonsense in accepting the legally deficient findings of the MB of the NYCPPF

that wrongfully, falsely, and irrationally asserted that Plaintiff was somehow capable of

performing full duty, despite extensive objective medical evidence and pleas by multiple

attending physicians including board-certified orthopedic surgeons and neurologists emphasizing

Plaintiff's inability to return to full duty status, and despite the findings of the MB of the

NYCPPF itself which even conceded that Plaintiff had no range of motion of the back and was

unable to walk on his left heels and toes.

47. As further evidenced in said transcript, the conversation by the BOT of the NYCPPF

established that no inquiry was made whatsoever as to whether the prior remand from the BOT

of the NYCPPF directing the MB of the NYCPPF to consider all new medical evidence was ever

sufficiently completed by the MB of the NYCPPF.

48. Said decision by the BOT of the NYCPPF was rendered as a final determination. Despite

possessing the power and authority to do so, the BOT of the NYCPPF did not defer making a

final determination and did not attempt to adequately review the legal sufficiency of its prior

remand to the MB of the NYCPPF, nor did the BOT of the NYCPPF attempt to obtain more

evidence or information from the MB of the NYCPPF or as to the facts and circumstances of

Plaintiff's discontinuance of police service from the NYCPD, either from KELLY as the Police Commissioner of the CITY, or from KLEINMAN as the Supervising Chief Surgeon of the NYCPD, or otherwise from the NYCPD.

49. To the best knowledge of Plaintiff, at no time did any of the defendants in the herein action come forward and present to any relevant persons, parties, or entities, a true and accurate description of the facts and circumstances relating to Plaintiff's injuries and disabilities, or to Plaintiff's discontinuance of police service from the NYCPD, nor were any further efforts taken to obtain such information.

50. Plaintiff commenced an Article 78 Proceeding in New York County Supreme Court to challenge the determinations of the BOT of the NYCPPF. Plaintiff prevailed in the First Department Appellate Division of the Supreme Court of the State of New York, which, on July 1, 2010, unanimously annulled the findings of the MB of the NYCPPF and remanded the matter back to the BOT of the NYCPPF ordering new findings by the MB of the NYCPPF and a new determination by the BOT of the NYCPPF consistent therewith [*see, Matter of Kiess v. Kelly*, 75 A.D.3d 416 (1st Dep't 2010)]. Defendants did not appeal this ruling.

51. As the First Department Appellate Division established its ruling, fairness dictates that before Plaintiff could be deprived of an ADR or ODR, the BOT of the NYCPPF should have required the MB of the NYCPPF to examine all of the relevant medical evidence, clearly state the reasoning for its recommendations as to how Plaintiff was medically fit for police work based on the medical evidence and its own medical findings. Defendants did not do this in Plaintiff's case.

52. On October 13, 2010, despite being ordered by the First Department Appellate Division

to have "new medical findings and reports by the Medical Board and a new determination by the Board of Trustees" the BOT of the NYCPPF tabled the matter instead of remanding it to the MB of the NYCPPF.

53. Again, on November 11, 2010, despite the orders of the First Department Appellate Division, the BOT of the NYCPPF tabled the matter instead of remanding it to the MB of the NYCPPF.

54. On December 8, 2010, despite the orders of the First Department Appellate Division, the BOT of the NYCPPF finally conceded that it would remand the matter to the MB of the NYCPPF as ordered – which presently still has not occurred – but noted for the record that, regardless of the reports and findings of the MB of the NYCPPF, the BOT of the NYCPPF contends that it will not issue an ADR or ODR to Plaintiff.

55. Effectively, the BOT of the NYCPPF has openly and notoriously evidenced its intention of not following the First Department Appellate Division orders, which effectively denies Plaintiff substantive due process of law and equal protection of the law, *inter alia.*

## AS AND FOR A FIRST CAUSE OF ACTION IN VIOLATION
## 42 U.S.C. § 1985 CONSPIRACY

56.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "55", as if set forth in full herein.

57.    NYPD defendants, under color of law, conspired with the Board of Trustees of the New York City Police Pension Fund to deprive plaintiff of his pension and constitutional rights, including the rights: to enjoy equal protection and due process of law. Defendants have conspired with and amongst each other to deprive Plaintiff of his rights under the United States Constitution and federal and state law.

58.    The Defendants acting individually and in their official capacities as Plaintiff's supervisors and/or administrative officers of the Board of Trustees, under color of law, and having been fully advised that plaintiff was being deprived of his pension and constitutional rights pursuant to Fourteenth Amendment, Equal Protection and Due Process Clause, either acted in a concerted, malicious intentional pattern to further violate plaintiff's Civil Rights, or knowing such violations was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy equal protection and due process of law; all in violation of the Constitution and laws of the United States and of 42 U.S.C. § 1985.

59.    The defendants BOARD OF TRUSTEES in acting to deprive plaintiff of his rights with the cooperation of the NYPD Defendants, failed to fairly evaluate plaintiff's ADR application; ignored the New York State Appellate Division First Department decision to "remand for new medical findings and reports by the Medical Board and a new determination by the Board of Trustees….." dated July 1, 2010; and rationale and common sense in denying plaintiff's ADR, and failed to perform or compel a fair and thorough investigation into plaintiff's ADR application as a result of a line of duty motor vehicle accident, but rather, blindly accepted the clearly flawed analysis report drafted by defendant PPF, denied plaintiff ADR and ODR, and thus misused their official powers and acted from a willful and malicious intent to deprive plaintiff of his ADR pension and civil rights.

60.    The Defendants in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

61.    Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from on or about July 10, 2007.

62.  Such policy and practice is an intentional and concerted effort by Defendants and NYPD supervisors and administrators.

63.  Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's Fourteenth Amendment rights to equal protection and due process.

64.  By reason of the foregoing, Defendants have violated §1985 (3), and Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

## AS AND FOR A SECOND CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. § 1983 IN VIOLATION OF FOURTEENTH AMENDMENT

65.  Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "64", as if set forth in full herein.

66.  That Defendants actions, as alleged herein, were committed under color of State law.

67.  That Defendants did conspire to violate Plaintiff's Constitutional rights by actually depriving him of entitlement to legally sufficient medical board findings and certification as to his disability, and constructively denying him of his ADR Pension and other pension rights, and intentionally disregarding and otherwise failing to yet comply with the Appellate Division First Department's Judgment dated July 1, 2010.

68.  That Defendants did willfully and knowingly conspire and disregarded evidence of Plaintiff's disability with the intent of causing Plaintiff to be wrongfully constructively discharged to then use as fuel to purport that Plaintiff has forfeited his pension rights.

69.     That Defendants maliciously and vindictively evaluated Plaintiff's pension application and submissions.

70.     That despite Defendants' knowledge that Plaintiff was disabled as a result of the line of duty injury they nevertheless forced him to endure the aforementioned employment conditions under duress knowing that he was incapable of performing the duties of a police officer, Plaintiff was the victim of wrongful constructive discharge from the NYCPD, and was and still is wrongfully denied of his pension rights and benefits.

71.     Plaintiff was denied his Constitutional rights pursuant to the Fourteenth Amendment in violation of his equal protection and due process.

72.     That the Defendants failed to properly investigate the medical evidence submitted by the Plaintiff as found by the New York State Appellate Division First Department, failed to remand Plaintiff's pension hearing and issue a proper report based on the medical records of Plaintiff's doctors and medical experts, and issue Plaintiff's pension benefits pursuant to the Collective Bargaining Agreement and New York City and New York State Civil Service.

73.     That as a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiff was deprived of his property rights, all in violation of his rights under the Fourteenth Amendment to the United States Constitution.

74.     That as a direct and proximate result of the foregoing, Plaintiff sustained injury and damage consisting of loss of property, economic damages, legal expenses and emotional distress for which Defendants are liable.

75.     Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's Fourteenth Amendment rights to equal protection and due process under 42 U.S.C. §1983.

76.     By reason of the foregoing, Defendants have violated §1983, and Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

## AS AND FOR A THIRD CAUSE OF ACTION IN VIOLATION OF New York STATE CONSTITUTION ARTICLE I §1

77.     Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "76", as if set forth in full herein.

78.     As a result of Defendants' failure to give Plaintiff a legally sufficient hearing in regards to his application for an ADR Pension, as subsequently adjudicated by the New York State Appellate Division First Department, Defendants violated Plaintiff's rights to be free from being disfranchised and deprived of any of the rights secured to him by the NYS Constitution Article I §1.

79.     Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under NYS Constitution.

80.     By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

### AS AND FOR A FOURTH CAUSE OF ACTION IN VIOLATION OF New York STATE CONSTITUTION ARTICLE I §11

**81.** Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "80", as if set forth in full herein.

82. As a result of Defendants' failure to give Plaintiff a legally sufficient hearing in regards to his application for an ADR Pension, as adjudicated by the New York State Appellate Division First Department, Defendants violated Plaintiff's rights of equal protection under the laws of the State of New York Constitution Article I §11.

83. Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under NYS Constitution.

84. By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

### AS AND FOR A FIFTH CAUSE OF ACTION IN VIOLATION OF New York STATE CONSTITUTION ARTICLE V §7

**85.** Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "84", as if set forth in full herein.

86. As a result of Defendants' failure to give Plaintiff to a legally sufficient hearing in regards to his application for an ADR Pension, as adjudicated by the New York State Appellate Division First Department, Defendants violated Plaintiff's rights to not have his benefits diminished and/or impaired by the unlawful acts of the Defendants under the laws of the State of New York Constitution Article V §7.

87.    Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under NYS Constitution.

88.    By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

## AS AND FOR A SIXTH CAUSE OF ACTION IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE §13-252

89.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "88", as if set forth in full herein.

90.    As a result of Defendants' failure to give Plaintiff a legally sufficient hearing in regards to his application for an ADR Pension, as adjudicated by the New York State Appellate Division First Department, Defendants violated Plaintiff's rights to not have his benefits diminished and/or impaired by the unlawful acts of the Defendants under the laws of New York City Administrative Code §13-252.

91.    Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under the rules and regulations of the City of New York.

92.    By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

## JURY TRIAL DEMAND

93.     Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiff respectfully requests that this Court find in his favor and against the Defendants as follows:

1.     Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00) as to all the causes of action.

2.     Granting Plaintiff all costs and disbursements of this action and related actions including reasonable attorneys' fees incurred by Plaintiff; and

3.     Order that Defendants adhere to the New York State Appellate Division First Department Judgment/Decision of *Kiess v. Kelly* dated July 1, 2010; and

3.     Granting the Plaintiff such other and further relief as may be deemed just and proper.

Dated:     Lake Success, NY
           January 27, 2011

                          Yours etc,
                          Cronin & Byczek, LLP

                          _____
                          LINDA M. CRONIN (LC0766)
                          Attorneys for Plaintiff
                          1983 Marcus Ave, Suite C-120
                          Lake Success, New York 11042
                          (516) 358-1700