UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
JOSHUA E. KIESS,

                                 Plaintiff,

              -against-

The CITY OF NEW YORK,
the NEW YORK CITY POLICE PENSION FUND Art. II,
the BOARD OF TRUSTEES of the N.Y.C. Police Pension
Fund Art. II, the MEDICAL BOARD of the N.Y.C. Police
Pension Fund Art. II, RAYMOND W. KELLY – Individually
and in his Official Capacities as the Police Commissioner of
the City of N.Y. and as the Chairperson of the Board of
Trustees of the N.Y.C. Police Pension Fund Art. II,
ANTHONY J. GARVEY – Individually and in his Official
Capacity as the Executive Director of the N.Y.C. Police
Pension Fund Art. II, KEVIN HOLLORAN – Individually
and in his Official Capacity as the Executive Director of the
N.Y.C. Police Pension Fund Art. II, PETER J. LESNIEWSKI
– Individually and in his Official Capacity as a Chairman or
Physician of the Medical Board of the N.Y.C. Police Pension
Fund Art. II, FRANK G. GUELLICH – Individually and in
his Official Capacity as a Chairman or Physician of the
Medical Board of the N.Y.C. Police Pension Fund Art. II,
NICHOLAS F. DEPALMA – Individually and in his Official
Capacity as a Physician of the Medical Board of the N.Y.C.
Police Pension Fund Art. II, STEPHEN E. BORKOW –
Individually and in his Official Capacity as a Physician of the
Medical Board of the N.Y.C. Police Pension Fund Art. II,
ELI J. KLEINMAN – Individually and in his Official
Capacities as the Supervising Chief Surgeon of the N.Y.C.
Police Department and as the Medical Advisor to the Board
of Trustees of the N.Y.C. Police Pension Fund Art. II,
MICHAEL T. MURRAY – Individually and in his Official
Capacity as a Police Surgeon of the N.Y.C. Police Department,
RAYMOND CAROLI – Individually and in his Official
Capacity as a Captain of the N.Y.C. Police Department,
MARJORIE S. SCHEIBER- Individually and in her Official
Capacity as a Physician of the Medical Board of the N.Y.C.

                                 Defendants.
--------------------------------------------------------------------------X

SECOND AMENDED
COMPLAINT AND
JURY TRIAL DEMAND


11 CV 0626

The plaintiff, JOSHUA E. KIESS, by his attorneys, CRONIN & BYCZEK, LLP, as and for his second amended complaint against defendants, the CITY OF NEW YORK, the NEW YORK CITY POLICE PENSION FUND Art. II, the BOARD OF TRUSTEES of the New York City Police Pension Fund Art. II, the MEDICAL BOARD of the New York City Police Pension Fund Art. II, RAYMOND W. KELLY, ANTHONY J. GARVEY, KEVIN HOLLORAN, PETER J. LESNIEWSKI, FRANK G. GUELLICH, NICHOLAS F. DEPALMA, STEPHEN E. BORKOW, ELI J. KLEINMAN, MICHAEL T. MURRAY, RAYMOND CAROLI and, MARJORIE S. SCHEIBER respectfully sets forth and alleges as follows:

## INTRODUCTION

1.    This is an action for equitable relief, compensatory damages, punitive damages, and attorneys' fees on behalf of plaintiff, JOSHUA E. KIESS who was, and currently is being, deprived of his Constitutional, Statutory, and Common Law rights under Federal, State, and City law as a result of the policies, practices, and customs of defendants – collectively and individually as further set forth herein – regarding Plaintiff's membership in the NEW YORK CITY POLICE PENSION FUND Article II and employment by the CITY OF NEW YORK as a Police Officer of the New York City Police Department. Said policies, practices, and customs of defendants – collectively and individually as further set forth herein – were implemented under color of law.

## JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

2

a.  the Fourteenth amendment to the United States Constitution providing for the rights of all persons within the jurisdiction of the United States to enjoy equal protection and due process of law, 42 U.S.C. §§ 1983, 1985(3) and 1988 providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

b.  the common law of the State of New York providing for damages to persons who sustain damages as a result of a defendant's breach of contract.

c.  New York City Administrative Code § 13-252, where a member is physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and certifying the time, place and conditions of such city-service performed by such member resulting in such alleged disability and that such alleged disability was not the result of willful negligence on the part of such member;

3.  The unlawful employment practices, violations of plaintiffs' civil rights, the creation of the contractual relationship, and tortuous acts complained of herein were committed within the Southern District of New York and the State of New York.

4.  The pendent jurisdiction of the federal district court is invoked with respect to the plaintiffs' claims under New York State Constitution and Common Law and New York City Administrative Code §13-252, pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PLAINTIFF

5.  Plaintiff JOSHUA E. KIESS (hereinafter referred to as "Plaintiff") is a male citizen of the United States of America, over twenty-one (21) years of age, and was formerly a resident of the County and State of New York at the times of the incidents herein alleged and former employee of the CITY OF NEW YORK as a Police Officer of the New York City Police Department (hereinafter referred to as "NYCPD") , and was a member of the New York City Police Pension Fund (hereinafter referred to as "NYCPPF") at all relevant times during said employment. Since approximately October 2011 Plaintiff's residency in the County and State of New York ceased, and at all times thereafter Plaintiff has been, and still is, a resident of the State of Ohio.

## DEFENDANTS

6.  Defendant CITY OF NEW YORK (hereinafter referred to as "CITY") was and is a municipal corporation organized and existing under and by virtue of the laws of the State of New York, and at all relevant times herein was Plaintiff's employer, with its central offices in the County of New York, and diverse offices and facilities throughout the State and County of New York.

7.  Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 2000-e (a) and (b), as amended in 1972, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

8.  Defendant NEW YORK CITY POLICE PENSION FUND Article II (hereinafter referred to as "NYCPPF"), at all relevant times herein had and has the powers and privileges of a corporation and by its name all of its business and related matters and affairs are

transacted. The NYCPPF is considered an entity separate from the NYCPD, and the NYCPPF does constitute an agency of the CITY under the provisions of Chapter Seventeen of the New York City Charter.

9.      Defendant BOARD OF TRUSTEES of the NYCPPF (hereinafter referred to as "BOT") did and does administer the NYCPPF and establishes rules and regulations for the administration and transaction of the business of the NYCPPF and for the control and disposition thereof. The BOT of the NYCPPF did and does work closely with the NYCPD.

10.     Defendant MEDICAL BOARD of the NYCPPF (hereinafter referred to as "MB") did and does consist of three physicians, or alternate physicians (as directed by the BOT of the NYCPPF), with one of such appointed by the BOT of the NYCPPF, one appointed by the Commissioner of Health of the CITY, and one appointed by the Commissioner of Citywide Administrative Services of the CITY. The MB of the NYCPPF performs and exercises functions, powers, and duties that consist of arranging for and passing upon all medical examinations required under the provisions of the N.Y.C. Administrative Code, to investigate all essential statements and certifications by or on behalf of any member of the NYCPPF in connection with an application for disability retirement, and to report to the BOT of the NYCPPF its conclusions and recommendations thereon. The MB holds the final decision-making authority on whether a PPF member is disabled for the purposes of qualifying for either Accident or Ordinary Disability Retirement, and such MB conclusions and recommendations are binding on the BOT.

11.     Defendant RAYMOND W. KELLY (hereinafter referred to as "KELLY"), at materially relevant times herein, was the Police Commissioner of the CITY, and was the

Chairperson of the BOT of the NYCPPF by virtue of holding such office as Police Commissioner of the CITY. The Police Commissioner of the CITY is appointed by the Mayor of the CITY and serves as the head of the NYCPD with cognizance and control of the government, administration, disposition and discipline of the NYCPD, and of the police force of the NYCPD. The Police Commissioner of the CITY serves as the Chief Executive Officer of the police force of the NYCPD, chargeable with and responsible for the execution of all laws and rules and regulations of the NYCPD. KELLY is a Defendant to the herein action in his Individual and said Official Capacities.

12. Defendant ANTHONY J. GARVEY (hereinafter referred to as "GARVEY") at materially relevant times herein, was the Executive Director of the NYCPPF. KELLY (or a predecessor thereof), as the Police Commissioner of the CITY, appointed GARVEY as the Executive Director of the NYCPPF. The Executive Director of the NYCPPF was required to perform such duties as were conferred upon him by KELLY as the Chairperson of the BOT of the NYCPPF, by resolution passed by the BOT of the NYCPPF, or by law. GARVEY is a Defendant to the herein action in his Individual and said Official Capacity.

13. Defendant KEVIN HOLLORAN (hereinafter referred to as "HOLLORAN") at materially relevant times herein, was the Executive Director of the NYCPPF. KELLY, as the Police Commissioner of the CITY, appointed HOLLORAN as the Executive Director of the NYCPPF. The Executive Director of the NYCPPF was and is required to perform such duties as were and are conferred upon him by KELLY as the Chairperson of the BOT of the NYCPPF, by resolution passed by the BOT of the NYCPPF, or by law. HOLLORAN is a Defendant to the herein action in his Individual and said Official Capacity.

14.    Defendant PETER J. LESNIEWSKI (hereinafter referred to as "LESNIEWSKI") at materially relevant times herein, was a physician holding N.Y. Physician License No. 60 137979, and was a Chairman and, in addition or in the alternative, a Physician or Alternate Physician of the MB of the NYCPPF. LESNIEWSKI was appointed by, and held such office at the pleasure of, the Commissioner of Citywide Administrative Services of the CITY. LESNIEWSKI is a Defendant to the herein action in his Individual and said Official Capacity.

15.    Defendant FRANK G. GUELLICH (hereinafter referred to as "GUELLICH") at materially relevant times herein, was a physician holding N.Y. Physician License No. 60 190694, and was a Chairman and, in addition or in the alternative, a Physician or Alternate Physician of the MB of the NYCPPF. GUELLICH was appointed by, and held such office at the pleasure of, the Commissioner of Health of the CITY. GUELLICH is a Defendant to the herein action in his Individual and said Official Capacity.

16.    Defendant NICHOLAS F. DEPALMA (hereinafter referred to as "DEPALMA") at materially relevant times herein, was a physician holding N.Y. Physician License No. 60 087231, and was, and may currently remain, a Physician or Alternate Physician of the MB of the NYCPPF. DEPALMA was appointed by, and held such office at the pleasure of, the BOT of the NYCPPF. DEPALMA is a Defendant to the herein action in his Individual and said Official Capacity.

17.    Defendant STEPHEN E. BORKOW (hereinafter referred to as "BORKOW") at materially relevant times herein, was a physician holding N.Y. Physician License No. 60 092199, was a Physician or Alternate Physician of the MB of the NYCPPF. BORKOW was appointed by, and held such office at the pleasure of, the Commissioner of Health of

the CITY. BORKOW is a Defendant to the herein action in his Individual and said Official Capacity.

18.     Defendant ELI J. KLEINMAN (hereinafter referred to as "KLEINMAN") at materially relevant times herein, was a physician holding N.Y. Physician License No. 60 136494, and was the Supervising Chief Surgeon of the NYCPD (Tax Registry No. 895053), and, based on information and belief, was appointed as such by KELLY (or a predecessor thereof), as the Police Commissioner of the CITY, and remained as such at the pleasure of KELLY as the Police Commissioner of the CITY. The Supervising Chief Surgeon serves within the NYCPD Administration with functions, powers, and duties that consist of, but are not limited to: overseeing and supervising all of the medical activities undertaken by the entire NYCPD; advising KELLY, as the Police Commissioner of the CITY, as well as the NYCPD Chief of Personnel, on establishing medical policy and preparedness issues relating to the NYCPD and the members thereof; and supervising the activities, treatments, diagnoses, prognoses, and duty status determinations of members of the police force of the NYCPD under the care or examination rendered or conducted by all Police Surgeons and Honorary Police Surgeons of the NYCPD. The Supervising Chief Surgeon also acts as the Medical Advisor to the BOT of the NYCPPF. KLEINMAN is a Defendant to the herein action in his Individual and said Official Capacities.

19.     Defendant MICHAEL T. MURRAY (hereinafter referred to as "MURRAY") at materially relevant times herein, was a physician holding N.Y. Physician License No. 60 206804, and was a Police Surgeon of the NYCPD (Tax Registry No. 942844), and, based on information and belief, was appointed as such by KELLY (or a predecessor thereof),

as the Police Commissioner of the CITY. At all materially relevant times herein, MURRAY performed Police Surgeon duties while assigned to the "Department Orthopedic Clinic" of the Medical Division of the NYCPD, and, based upon information and belief, being appointed to such assignment by, and/or remaining in such assignment at the pleasure of, KELLY as the Police Commissioner of the CITY and/or KLEINMAN. In such capacity, MURRAY conducted medical examinations, treatment authorizations, diagnoses, prognoses, and duty status determinations of members of the police force of the NYCPD (including Plaintiff) under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN. Members of the police force of the NYCPD (including Plaintiff) were referred to MURRAY in the "Department Orthopedic Clinic" of the Medical Division by their assigned "Medical District" Police Surgeon under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN. MURRAY is a Defendant to the herein action in his Individual and said Official Capacity.

20. Defendant RAYMOND CAROLI (hereinafter referred to as "CAROLI"), at materially relevant times herein, was a Captain of the NYCPD (Tax Registry No. 888518), assigned as the Commanding Officer of the 6th Precinct of the NYCPD, appointed as such by, and at the pleasure of, KELLY as the Police Commissioner of the CITY. At materially relevant times herein, CAROLI was the Commanding Officer of Plaintiff. CAROLI is a Defendant to the herein action in his Individual and said Official Capacity.

21. Defendant MARJORIE SCHEIBER, MD (hereinafter referred to as "SCHEIBER") at materially relevant times herein, was a physician holding N.Y. Physician License No. 150779, and was a Physician or Alternate Physician of the MB of the NYCPPF.

SCHEIBER was appointed by, and held such office at the pleasure of, the Commissioner of Health of the CITY. SCHEIBER is a Defendant to the herein action in her Individual and said Official Capacity.

## PROCEDURAL REQUIREMENTS

22.  Plaintiff has filed suit with this Court within the applicable statute of limitations period.

23.  Plaintiff is not required to exhaust any administrative procedures prior to suit under the United States Constitution and the Civil Rights Act of 1871.

## BACKGROUND

24.  On March 4, 2002, Plaintiff was appointed as an Auxiliary Police Officer of the Auxiliary Police Section of the NYCPD, and was assigned to the command of the 10th Precinct.

25.  Plaintiff was the recipient of numerous forms of Departmental Recognition in said capacity, receiving the Award of Merit on two occasions, a Commendation on one occasion, a Unit Citation, and the honored distinction of "Auxiliary Police Officer of the Year – Patrol Borough Manhattan South" by KELLY as the Police Commissioner of the CITY.

26.  Plaintiff served in said capacity until his appointment and employment as a Police Officer in the NYCPD.

27.  On June 4, 2002, Plaintiff was simultaneously appointed and employed as a Police Cadet of the Police Cadet Corps of the NYCPD. Plaintiff was assigned to the permanent commands of Police Service Area 4 and then the Office of the Chief of Housing Bureau,

and was employed in said capacity until his appointment and employment as a Police Officer in the NYCPD.

28.   Plaintiff was appointed as a Police Officer to the uniformed police force of the NYCPD on January 20, 2004, and was thereby employed by the CITY, and more specifically the NYCPD as an agency of the CITY, in which Plaintiff served continuously as a police as a Police Officer until his separation from service on January 30, 2008.

29.   Plaintiff, prior to his appointment as a Police Officer of the NYCPD, passed all physical and mental examinations and agility tests administered by the NYCPD that demonstrated Plaintiff to be both physically and mentally fit to perform the full duties of a Police Officer of the uniformed police force of the NYCPD.

30.   Pursuant to N.Y.C. Admin. Code § 13-214, Plaintiff was at all material times hereinafter a member of the NYCPPF while in city-service, and, as a member thereof, made any and all contributions thereto as required by law.

31.   Accordingly, pursuant to N.Y. Constitution Art. V, § 7, Plaintiff's said membership in the NYCPPF formed a contractual relationship, the benefits to Plaintiff of which were not to be diminished or impaired.

32.   On November 24, 2006, Plaintiff sustained line-of-duty (hereinafter referred to as "LOD") injuries to his neck, back, and both knees in a motor vehicle accident, when a taxicab failed to yield the right-of-way at an intersection and collided into the marked NYCPD vehicle that Plaintiff was operating with emergency lights and sirens activated while responding to an emergency situation involving multiple reports of an armed dispute in progress.

33.    Shortly thereafter, CAROLI recommended LOD status for Plaintiff's injury, which was ultimately approved by the Medical Division of the NYCPD, which never contested that Plaintiff was injured while acting in the line-of-duty as a natural and proximate result of city-service, which was not the part of any willful negligence by Plaintiff.

34.    From November 24, 2006, until the present the Plaintiff was disabled from the performance of Full Duty as a New York City Police Officer.

35.    Upon conferral, advisement, and recommendation of Plaintiff's numerous attending physicians, including multiple board-certified orthopedic spinal surgeons and neurologists, as well as Plaintiff's assigned Police Surgeon Frederick S. Fensterer of NYCPD Medical District 5, Plaintiff submitted an Application for Accident Disability Retirement (hereinafter referred to as "ADR") to the BOT of the NYCPPF and the Commanding Officer of the Medical Division of the NYCPD on or around May 25, 2007.

36.    Shortly thereafter, under the direction of KELLY, as the Police Commissioner of the CITY, an Application for Ordinary Disability Retirement (hereinafter referred to as "ODR") was also submitted on Plaintiff's behalf to the BOT of the NYCPPF and the Commanding Officer of the Medical Division of the NYCPD.

37.    On June 15, 2007, the Plaintiff's assigned Police Surgeon Frederick S. Fensterer, of NYCPD Medical District 5, determined that Plaintiff was medically unable to attempt firearms qualification as a result of the LOD injuries sustained on November 24, 2006, and the Commanding Officer of the Medical Division of the NYCPD so advised the Commanding Officer of Plaintiff.

38.    On July 10, 2007, Plaintiff was examined by the MB of the NYCPPF – consisting of physicians GUELLICH, LESNIEWSKI, and DEPALMA – which unanimously

recommended disapproval of Plaintiff's own Application for ADR and the Police Commissioner's Application for ODR submitted by KELLY on behalf of Plaintiff.

39.    Shortly thereafter, in light of new medical evidence, the BOT of the NYCPPF remanded the matter back to the MB of the NYCPPF and so directed the MB of the NYCPPF to evaluate and consider specific new medical evidence including, *inter alia*, a report from a board-certified orthopedic surgeon stating that Plaintiff was unable to return to work due to severe pain from his LOD injuries and had limited options for improvement through surgery as well as additional objective medical evidence from the results of an EMG performed by a board-certified neurologist which demonstrated radiculopathy, with an accompanying report that Plaintiff was totally disabled from his LOD injuries.

40.    On January 14, 2008, on the order of KLEINMAN, Plaintiff appeared before MURRAY at the Department Orthopedic Clinic of the NYCPD Medical Division and was returned from Sick Report duty status to Restricted Duty status. Plaintiff notified MURRAY that a subsequent MB evaluation was upcoming in the immediate future, and MURRAY notified Plaintiff that MURRAY and KLEINMAN "didn't care" what the diagnosis, prognosis, and recommendations of Plaintiff's attending physicians and surgeons were, and that MURRAY and KLEINMAN would "make it known" to the MB that Plaintiff was "too young" to be retired ADR or ODR and that, if Plaintiff was disapproved for ADR or ODR by the upcoming the MB of the NYCPPF that MURRAY would modify his prognosis and duty capability determinations of Plaintiff and immediately return Plaintiff to Full Duty status without advance notice or further examination under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN. Plaintiff was further advised by MURRAY that any attempt to

circumvent such a return to Full Duty status by going on Sick Report would subject Plaintiff to suspension by the NYCPD Medical Division for "malingering" under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN, and that Plaintiff's NYPD career would be "over."

41.     On January 29, 2008, Plaintiff was re-examined by the MB of the NYCPPF – consisting of physicians LESNIEWSKI, DEPALMA, and BORKOW – which failed to consider or even address the new medical evidence as so directed by the BOT of the NYCPPF, and further failed to explain its own medical findings upon examination of Plaintiff, and unanimously rendered an arbitrary, capricious, irrational, unreasonable, and unlawful recommendation to the BOT of the NYCPPF of disapproval of Plaintiff's own Application for ADR and the Police Commissioner's Application for ODR submitted by KELLY on behalf of Plaintiff.

42.     On January 30, 2008, Plaintiff reported to NYCPD Medical District 5 and appeared before and conferred with his assigned Police Surgeon Frederick S. Fensterer of NYCPD Medical District 5. Although Plaintiff was off-duty, Plaintiff felt compelled to report to Police Surgeon Fensterer on his own time because of the threats by MURRAY and to ensure that the NYCPD Medical Division was immediately informed that the second disapproval by the MB of the NYCPPF was arbitrary, capricious, unreasonable, irrational, and otherwise unlawful, and that a return to full duty status as threatened by MURRAY would result in the compromise of the safety of Plaintiff, fellow officers, and the general public, and to emphasize to the NYCPD Medical Division that a police officer, especially "full duty status," has unique legal duties and obligations that would legally require Plaintiff to take police action, even while off duty. Plaintiff was advised

by Police Surgeon Fensterer that Plaintiff was in the imminent process of being immediately returned to Full Duty status by MURRAY as a result of the second disapproval by the MB of the NYCPPF under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN, and that Plaintiff would be suspended by MURRAY for "malingering" if Plaintiff made any attempt to circumvent the return to full duty status by going on sick report. Police Surgeon Fensterer further informed Plaintiff that he disagreed with the way in which this matter was being handled, but that the matter at this point was "over his head," because Plaintiff's return to full duty status was in the process of being ordered by MURRAY under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN. Furthermore, Police Surgeon Fensterer indicated that he was pressured to retract his prior determination that Plaintiff was medically unable to attempt firearms qualification as a result of the second disapproval by the MB of the NYCPPF under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN, at which time the Commanding Officer of the Medical Division of the NYCPD forthwith so advised CAROLI, as Commanding Officer of the 6th Precinct of the NYCPD, that Plaintiff was medically able to attempt firearms qualification.

43.  In light of these exigent circumstances, and the requirement of Plaintiff to be armed at all times while on duty, even in a Restricted Duty capacity, and the notification that Plaintiff received that Plaintiff was in the imminent process of being returned to Full Duty status by MURRAY as a result of the second disapproval by the MB of the NYCPPF under the policies, practices, customs, orders, or otherwise directions, commands, and supervision of KLEINMAN, Plaintiff immediately reported to the 6th Precinct and advised CAROLI

of these circumstances, and that the second disapproval by the MB of the NYCPPF was arbitrary, capricious, unreasonable, irrational, and otherwise unlawful, and subsequently resulted in the compromise of the safety of Plaintiff, fellow officers, and the general public. CAROLI failed to take any appropriate action, conduct any further investigation or inquiry into available accommodation, remedy, or recourse to said facts and circumstances that Plaintiff was under. Subsequently, under extreme duress and as a choice of last resort, Plaintiff surrendered his firearms and NYCPD property to Sergeant Kathleen M. Van Buren and conducted a Resignation and Exit Interview with CAROLI in which Plaintiff tendered his resignation to CAROLI on the grounds that he felt compelled to resign since Plaintiff was denied a lawful MB evaluation, that duty status determinations were being based upon said unlawful MB evaluation, and since Plaintiff was unable to perform full duty status as a police officer due to the line-of-duty injuries Plaintiff sustained on November 24, 2006. Plaintiff never waived or forfeited his federal constitutional rights to seek adequate and meaningful redress for the unlawful actions of the MB.

44.    As a Police Officer, Plaintiff was the recipient of Departmental Recognition in the form of an Excellent Police Duty medal, and had twelve (12) additional formal Departmental Recognition Requests submitted on behalf of Plaintiff by his supervisory officers that were pending at the time of his resignation from employment by the CITY and the NYCPD.

45.    On May 14, 2008, the BOT of the NYCPPF made a final determination disapproving of Plaintiff's Application for ADR and the Police Commissioner's Application for ODR submitted by KELLY on behalf of Plaintiff, and failed to remand the arbitrary,

capricious, irrational, unreasonable, and otherwise unlawful findings of the MB of the NYCPPF.

46.    As evidenced in the transcript of the May 14, 2008 Executive Session of the BOT of the NYCPPF, the BOT of the NYCPPF failed to compel a further investigation into the facts and circumstances of Plaintiff's disabilities as well as his discontinuance of police service with the NYCPD, failed to analyze the extensive medical documentation in proper detail, and ignored rationale and commonsense in accepting the legally deficient findings of the MB of the NYCPPF that wrongfully, falsely, and irrationally asserted that Plaintiff was somehow capable of performing full duty, despite extensive objective medical evidence and pleas by multiple attending physicians including board-certified orthopedic surgeons and neurologists emphasizing Plaintiff's inability to return to full duty status, and despite the findings of the MB of the NYCPPF itself which even conceded that Plaintiff had no range of motion of the back and was unable to walk on his left heels and toes.

47.    As further evidenced in said transcript, the conversation by the BOT of the NYCPPF established that no inquiry was made whatsoever as to whether the prior remand from the BOT of the NYCPPF directing the MB of the NYCPPF to consider all new medical evidence was ever sufficiently completed by the MB of the NYCPPF.

48.    Said decision by the BOT of the NYCPPF was rendered as a final determination.

49.    To the best knowledge of Plaintiff, at no time did any of the defendants in the herein action come forward and present to any relevant persons, parties, or entities, a true and accurate description of the facts and circumstances relating to Plaintiff's injuries and disabilities, or to Plaintiff's discontinuance of police service from the NYCPD, nor were any further efforts taken to obtain such information.

50.     Plaintiff commenced an Article 78 Proceeding in New York County Supreme Court to
challenge the determinations of the BOT of the NYCPPF. Plaintiff prevailed in the First
Department Appellate Division of the Supreme Court of the State of New York, which,
on July 1, 2010, unanimously annulled the findings of the MB of the NYCPPF and
remanded the matter back to the BOT of the NYCPPF ordering new findings by the MB
of the NYCPPF and a new determination by the BOT of the NYCPPF consistent
therewith [*see, Matter of Kiess v. Kelly*, 75 A.D.3d 416 (1st Dep't 2010)]. Defendants did
not appeal this ruling.

51.     As the First Department Appellate Division established its ruling, fairness dictates that
before Plaintiff could be deprived of an ADR or ODR, the MB of the NYCPPF was
required examine all of the relevant medical evidence, clearly state the reasoning for its
recommendations as to how Plaintiff was medically fit for police work based on the
medical evidence and its own medical findings, and that the MB (specifically,
LESNIEWSKI, DEPALMA, BORKOW) and the BOT did not do this in connection with
the ADR and ODR applications that were submitted in Plaintiff's case.

52.     On October 13, 2010, despite being ordered by the First Department Appellate Division
to have "new medical findings and reports by the Medical Board and a new determination
by the Board of Trustees" the BOT of the NYCPPF tabled the matter instead of
remanding it to the MB of the NYCPPF.

53.     Again, on November 11, 2010, despite the orders of the First Department Appellate
Division, the BOT of the NYCPPF tabled the matter instead of remanding it to the MB of
the NYCPPF.

54.    On December 8, 2010, despite the orders of the First Department Appellate Division, the BOT of the NYCPPF finally conceded that it would remand the matter to the MB of the NYCPPF as ordered – which presently still has not occurred – but noted for the record that, regardless of the reports and findings of the MB of the NYCPPF, the BOT of the NYCPPF contends that it will not issue an ADR or ODR to Plaintiff, which thus effectively rendered the remand process a meaningless pro forma exercise with a preordained result already declared.

55.    Effectively, the BOT of the NYCPPF has openly and notoriously evidenced its intention of not following the First Department Appellate Division orders, which effectively denies Plaintiff due process of law and equal protection of the law, *inter alia.*

56.    On March 8, 2011, the Medical Board – this time consisting of LESNIEWSKI, DEPALMA, and SCHEIBER – reaffirmed the prior decision in spite of the New York State First Appellate Division Order annulling their actions which initially disapproved Plaintiff's application for ADR and KELLY's application for ODR for Plaintiff. Incredibly, this Medical Board neither re-examined Plaintiff nor reviewed the medical evidence as the First Department ordered.

57.    The report of said Medical Board fraudulently states that they re-examined Plaintiff prior to their decision as contained as their memorandum dated March 8, 2011. Specifically, the memorandum is entitled "Examination of Retire Member of the Service."  Plaintiff was never re-examined. Further in Paragraph 2 in the memorandum dated March 8, 2011, the Medical Board stated "When last seen…" implying that in compliance with the court order they had re-examined the Plaintiff. Finally the Medical Board in paragraph 4 makes the statement "the Medical Board reviewed all new evidence that was submitted."

However, the court order specifically required that upon remand that the Medical Board review and opine on all the evidence that it had ignored in its prior decision.

58.    On May 11, 2011 the Board of Trustees claimed that they had no jurisdiction to make a decision in spite of the First Appellate Division Court order. Further, as found in the minutes of their meeting they fraudulently stated that the Medical Board "Reaffirms disapproval of accident and ordinary disability for retired police officer Joshua Kiess **after examination** (emphasis added)…" Both the Medical Board and the Board of Trustees completely ignored the judicial remand and neither re-examined Plaintiff or reviewed the medical evidence which Plaintiff had established and the court ordered was not reviewed by the Medical Board.

59.    Plaintiff subsequently commenced a second Article 78 proceeding to challenge these actions of the CITY, KELLY, NYCPPF, MB, and BOT. The second Article 78 proceeding was commenced in New York County Supreme Court under Kiess v. Kelly, Index No. 110044/11, in which New York County Supreme Court ruled that Plaintiff was pension eligible by virtue of the prior First Department order in Kiess v. Kelly I, that the MB conclusions and recommendations were again unlawful, and thus remanded for a lawful MB evaluation and a new determination by the BOT. The CITY then appealed to the First Department, which reversed the lower court. Although the deprivation of Plaintiff's constitutional property interest to ADR and/or ODR that occurred on January 29, 2008, by the MB consisting of LESNIEWSKI, DEPALMA, and BORKOW, was expressly re-acknowledged by the First Department in this second proceeding, the First Department ultimately held that, under state law in this specific fact pattern, the Article 78 process could not provide redress to Plaintiff for this deprivation because Plaintiff's

resignation from the NYCPD terminated his membership in the NYCPPF. Leave to appeal to the Court of Appeals was denied by the First Department and then the Court of Appeals.

## AS AND FOR A FIRST CAUSE OF ACTION IN VIOLATION
## 42 U.S.C. § 1985 CONSPIRACY

60.  Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "59", as if set forth in full herein.

61.  NYPD defendants, under color of law, conspired with the Board of Trustees of the New York City Police Pension Fund and the Medical Board and the Medical Board Doctors to deprive plaintiff of his pension and constitutional rights, including the rights: to enjoy equal protection and due process of law. Defendants have conspired with and amongst each other to deprive Plaintiff of his rights under the United States Constitution and federal and state law.

62.  The Defendants acting individually and in their official capacities as Plaintiff's supervisors and/or administrative officers of the Board of Trustees, the Medical Board and Medical Board doctor defendants under color of law, and having been fully advised that plaintiff was being deprived of his pension and constitutional rights pursuant to Fourteenth Amendment, Equal Protection and Due Process Clause, either acted in a concerted, malicious intentional pattern to further violate plaintiff's Civil Rights, or knowing such violations was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy equal protection and due process of law; all in violation of the Constitution and laws of the United States and of 42 U.S.C. § 1985.

63.     The defendants BOARD OF TRUSTEES and Medical Board and Medical Board defendant doctors in acting to deprive plaintiff of his rights with the cooperation of the NYPD Defendants, failed to fairly evaluate plaintiff's ADR application; ignored the New York State Appellate Division First Department decision to "remand for new medical findings and reports by the Medical Board and a new determination by the Board of Trustees….." dated July 1, 2010; and rationale and common sense in denying plaintiff's ADR, and failed to perform or compel a fair and thorough investigation into plaintiff's ADR application as a result of a line of duty motor vehicle accident, but rather, blindly accepted the clearly flawed analysis report drafted by defendant PPF, denied plaintiff ADR and ODR, and thus misused their official powers and acted from a willful and malicious intent to deprive plaintiff of his ADR pension and civil rights.

64.     The Defendants in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

65.     Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from on or about July 10, 2007.

66.     Such policy and practice is an intentional and concerted effort by Defendants and NYPD supervisors and administrators.

67.     Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's Fourteenth Amendment rights to equal protection and due process.

68.     By reason of the foregoing, Defendants have violated §1985 (3), and Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN

MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual

Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).


**AS AND FOR A SECOND CAUSE OF ACTION**
**PURSUANT TO 42 U.S.C. § 1983 IN VIOLATION OF FOURTEENTH AMENDMENT**

69.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "68", as if set forth in full herein.

70.    That the actions of all Defendants, as alleged herein, were committed under color of State law.

71.    Plaintiff had a constitutionally protected legitimate property interest in his ADR and/or ODR pension while he was a member of the NYCPD and NYCPPF, including, but not limited to, when Plaintiff submitted his own ADR application or about May 25, 2007, when KELLY submitted an ODR application on behalf of Plaintiff shortly thereafter, when Plaintiff was evaluated by the MB – consisting of GUELLICH, LESNIEWSKI, DEPALMA – on July 10, 2007, when said MB conclusions and recommendations were reported to the BOT shortly thereafter, and when Plaintiff was again evaluated by the MB – consisting of LESNIEWSKI, DEPALMA, BORKOW – on January 29, 2008.

72.    In addition, or in the alternative, Plaintiff had a constitutionally protected right to receive a lawful MB evaluation when an ADR or ODR application was submitted by or on behalf of Plaintiff – both before the MB – consisting of GUELLICH, LESNIEWSKI, DEPALMA on July 10, 2007, and before the MB – consisting of LESNIEWSKI, DEPALMA, BORKOW – on January 29, 2008.

73.  In addition, or in the alternative, Plaintiff had a constitutionally protected legitimate claim of entitlement to his ADR and/or ODR pension while he was a member of the NYCPD and NYCPPF that vested at the time his disability qualified him for ADR and/or ODR.

74.  In addition, or in the alternative, Plaintiff had a constitutionally protected right to receive the entitlement to his ADR and/or ODR pension within a reasonable time.

75.  The July 10, 2007, Medical Board – GUELLICH, LESNIEWSKI, DEPALMA – deprived Plaintiff of said constitutionally protected rights and interests, by rendering unlawful, arbitrary and capricious MB conclusions and recommendations that were binding on the BOT and precluded it from approving Plaintiff's ADR and/or ODR pension as a matter of state law.

76.  The January 29, 2008, Medical Board – LESNIEWSKI, DEPALMA, BORKOW – deprived Plaintiff of said constitutionally protected rights and interests, by blatantly refusing to consider the new medical evidence presented, making incredible recommendations that were self-contradictory to their own medical findings, and otherwise rendering – as adjudicated in Kiess v. Kelly I, and expressly re-acknowledged in Kiess v. Kelly II – unlawful, arbitrary and capricious MB conclusions and recommendations. These were binding on the BOT and would have precluded it from approving Plaintiff's ADR and/or ODR pension as a matter of state law.

77.  The CITY, PPF, BOT, KELLY (as Chairman of the BOT), HOLLORAN, and GARVEY had a duty and obligation to train, supervise, or otherwise ensure that the MB of the BOT were acting lawfully and properly. Said defendants failed to fulfill this duty.

78.  The NYPD procedures, practices, policies, customs, or otherwise directions or orders of the CITY, KELLY (as Police Commissioner), KLEINMAN, MURRAY and/or CAROLI,

coupled with the unlawful actions of the PPF defendants, resulted in a delay that was so unreasonable and burdensome under the totality of the circumstances to amount to a deprivation of Plaintiff's constitutional due process and/or equal protection rights.

79. The Article 78 process was exhausted by Plaintiff and, although it acknowledged the deprivation of a lawful MB evaluation and recommendation – at the very least, LESNIEWSKI, DEPALMA, BORKOW – it ultimately did not provide any corrective procedures to redress the adjudicated deprivation it acknowledged.

80. As applied to this case, the Article 78 process did not provide Plaintiff with any form of redress. Thus, Plaintiff was not afforded with a meaningful or adequate post-deprivation remedy, and thus Plaintiff's federally guaranteed due process rights were violated since the Article 78 process effectively held the adjudicated constitutional deprivation immune from redress.

81. In addition, or in the alternative, Plaintiff was subject to unfavorable and unlawful treatment by the NYCPPF defendants, particularly the MB physicians, on the basis of their intentions to inhibit and/or punish Plaintiff for exercising his constitutional right to seek his ADR and/or ODR pension. Particularly, LESNIEWSKI, DEPALMA, BORKOW blatantly refused to consider medical evidence submitted and made MB conclusions and recommendations that were logically inconsistent and self-contradictory with their own medical findings.

82. Other similarly situated NYCPPF members who have been considered by the MB including, but not limited to, those physicians specifically named herein, in connection with ADR and/or ODR applications, regularly received lawful MB evaluations, and further, other similarly situated NYCPPF members – with substantially similar or even

less serious injuries, diagnoses, prognoses – have routinely been recommended for ADR and/or ODR by MB physicians, including but not limited to those specifically named herein.

83. That Defendants did actually or constructively, violate, diminish, and impair Plaintiff's Constitutional rights by actually depriving him of entitlement to legally sufficient medical board findings and certification as to his disability, and constructively denying him of his ADR Pension and other pension rights, and intentionally disregarding and otherwise failing to yet comply with the Appellate Division First Department's Judgment dated July 1, 2010.

84. That Defendants did willfully and knowingly conspire and disregarded evidence of Plaintiff's disability with the intent of causing Plaintiff to be wrongfully constructively discharged to then use as fuel to purport that Plaintiff has forfeited his pension rights.

85. That Defendants maliciously and vindictively evaluated Plaintiff's pension application and submissions.

86. That despite Defendants' knowledge that Plaintiff was disabled as a result of the line of duty injury they nevertheless forced him to endure the aforementioned employment conditions under duress knowing that he was incapable of performing the duties of a police officer, Plaintiff was the victim of wrongful constructive discharge from the NYCPD, and was and still is wrongfully denied of his pension rights and benefits.

87. Plaintiff was denied his Constitutional rights pursuant to the Fourteenth Amendment in violation of his equal protection and due process.

88. That the Defendants failed to properly investigate the medical evidence submitted by the Plaintiff as found by the New York State Appellate Division First Department, failed to

remand Plaintiff's pension hearing and issue a proper report based on the medical records of Plaintiff's doctors and medical experts, and issue Plaintiff's pension benefits pursuant to the Collective Bargaining Agreement and New York City and New York State Civil Service.

89.    That as a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiff was deprived of his property rights, all in violation of his rights under the Fourteenth Amendment to the United States Constitution.

90.    That as a direct and proximate result of the foregoing, Plaintiff sustained injury and damage consisting of loss of property, economic damages, legal expenses and emotional distress for which Defendants are liable.

91.    Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's Fourteenth Amendment rights to equal protection and due process under 42 U.S.C. §1983.

92.    By reason of the foregoing, Defendants have violated §1983, and Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).


**AS AND FOR A THIRD CAUSE OF ACTION IN VIOLATION OF NEW YORK STATE CONSTITUTION ARTICLE I §1**

93.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "92", as if set forth in full herein.

94.    As a result of Defendants' failure to give Plaintiff a legally sufficient hearing in regards to his application for an ADR Pension, as subsequently adjudicated by the New York

State Appellate Division First Department, Defendants violated Plaintiff's rights to be free from being disfranchised and deprived of any of the rights secured to him by the NYS Constitution Article I §1.

95.    Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under NYS Constitution.

96.    By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

## AS AND FOR A FOURTH CAUSE OF ACTION IN VIOLATION OF NEW YORK STATE CONSTITUTION ARTICLE I §11

97.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "96", as if set forth in full herein.

98.    As a result of Defendants' failure to give Plaintiff a legally sufficient hearing in regards to his application for an ADR Pension, as adjudicated by the New York State Appellate Division First Department, Defendants violated Plaintiff's rights of equal protection under the laws of the State of New York Constitution Article I §11.

99.    Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under NYS Constitution.

100.    By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00);

and punitive damages against the individual Defendants in the amount of not less than
TEN MILLION DOLLARS ($10,000,000.00).


### AS AND FOR A FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT IN VIOLATION OF NEW YORK STATE CONSTITUTION ARTICLE V §7

101.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "100", as if set forth in full herein.

102.    Plaintiff's membership in the NYCPPF created a contractual relationship as a matter of law pursuant to N.Y. Const. Art. V § 7.

103.    Plaintiff exercised his constitutional – and contractual – rights when ADR and/or ODR applications were submitted in connection with Plaintiff's disability that precluded him from performing full police duty.

104.    The CITY, PPF, Kelly (as Chairperson of BOT), BOT, MB, GUELLICH, LESNIEWSKI, DEPALMA, BORKOW – breached their contractual duties to Plaintiff to the extent that they actually or constructively: (1) denied Plaintiff the right to a lawful MB evaluation for ADR and/or ODR purposes as required by N.Y.C. Administrative Code (and more specifically, N.Y.C. Admin. Code §13-252); (2) diminished and impaired Plaintiff's contractual pension rights established by N.Y. Const. Art. V § 7; and (3) violated the implied contractual covenants of good faith and fair dealing, that apply to all contracts under N.Y. state law.

105.    Plaintiff was not retired on ADR or ODR while a member of the NYCPD and NYCPPF as a result of this breach of contract, and Plaintiff suffered actual and proximate damages from said deprivation.

106.    Plaintiff's discontinuance from service was predicated on said Defendants' failure to provide Plaintiff with lawful MB certifications which precluded him from having access to his ADR and/or ODR while he was a member of the NYCPD and NYCPPF. There is a direct nexus between said deprivations and Plaintiff's resignation. But for said Defendant's unlawful deprivations, Plaintiff would not have had any reason for the resignation.

107.    As a result of Defendants' failure to give Plaintiff to a legally sufficient hearing in regards to his application for an ADR Pension, as adjudicated by the New York State Appellate Division First Department, Defendants violated Plaintiff's rights to not have his benefits diminished and/or impaired by the unlawful acts of the Defendants under the laws of the State of New York Constitution Article V §7.

108.    Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under NYS Constitution.

109.    By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

**AS AND FOR A SIXTH CAUSE OF ACTION IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE §13-252**

110.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "109", as if set forth in full herein.

111.  As a result of Defendants' failure to give Plaintiff a legally sufficient hearing in regards to his application for an ADR Pension, as adjudicated by the New York State Appellate Division First Department, Defendants violated Plaintiff's rights to not have his benefits diminished and/or impaired by the unlawful acts of the Defendants under the laws of New York City Administrative Code §13-252.

112.  Plaintiff's actual deprivation of entitlement to legally sufficient medical board findings and certification as to his disability status violated Plaintiff's rights secured under the rules and regulations of the City of New York.

113.  By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).

## AS AND FOR A SEVENTH CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1983 POLICY AND PRACTICE UNDER *MONELL V. DEPARTMENT OF SOCIAL SERVICES*

114.  Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "113", as if set forth in full herein.

115.  In addition, or in the alternative, Defendants' violations of Plaintiff's constitutional rights while acting under color of law resulted from a custom, policy and practice and Defendants are thus liable pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 n.58, 98 S.Ct 2037 n.58 (1978), including in that they were negligent in the hiring, retention, supervision, and training of all MB physicians defendants.

116.  Upon information and belief, the MB of the PPF has a documented history of rendering unlawful MB conclusions and recommendations, as substantiated by various Article 78

proceedings that have demonstrated past unlawful conduct by the MB, including some or all of the particular MB physician defendants in this action. This amounted to a custom, practice or practice of disregarding such unlawful behavior by MB physician defendants.

117.    Upon information and belief, BORKOW has been the defendant in at least two medical malpractice lawsuits in New York state courts, DEPALMA has been the defendant in at least three medical malpractice lawsuits in New York state courts, and LESNIEWSKI has been the subject of at least ten medical malpractice lawsuits in New York state courts. LESNIEWSKI's physician license has been revoked by the State of New York Office for Professional Medical Conduct and LESNIEWSKI is currently serving a federal prison sentence after being convicted by a jury of numerous felonies in connection with his having rendered unlawful findings in connection with disability pension applications.

118.    By reason of the foregoing, Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00).


## JURY TRIAL DEMAND

119.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against the Defendants as follows:

1. Plaintiff is entitled to economic, emotional and compensatory damages in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00); and punitive damages against the individual Defendants in the amount of not less than TEN MILLION DOLLARS ($10,000,000.00) as to all the causes of action.

2. Granting Plaintiff all costs and disbursements of this action and related actions including reasonable attorneys' fees incurred by Plaintiff; and

3. Granting the Plaintiff such other and further relief as may be deemed just and proper.

Dated:        Lake Success, NY
              April 17, 2015

**CRONIN & BYCZEK, LLP**

_____
Moshe C. Bobker (MB1090)
*Attorneys for Plaintiff*
1979 Marcus Ave, Suite 203
Lake Success, New York 11042
(516) 358-1700